UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF NICHOLAS REYNOLDS,

    Plaintiff,

v.

    Case No. 08-cv-14909

    Honorable Nancy G. Edmunds

CITY OF DETROIT and ESTATE OF
DARRYL RANDALL, Detroit Police Officer,

    Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant City of Detroit's motion for summary judgment. For the reasons set forth below, Defendant's motion is GRANTED.

**I.     Facts**

On January 27, 2008, Plaintiff's decedent Nicolas Reynolds ("Plaintiff") was arrested for an alleged domestic violence dispute at his home by Detroit police officers. (Pl.'s Resp. 5.) Detroit police officers transported Plaintiff to the Detroit Police Department Northeastern District without incident. (*Id.*) Upon arrival, the arresting officers transferred custody of Plaintiff to Defendant Darryl Randall ("Randall") for processing. (*Id.*) During the processing, Plaintiff and Randall got into a verbal altercation and Randall punched Plaintiff in the face, slammed Plaintiff to the floor, and placed Plaintiff in a choke hold. (*Id.*) Randall then picked Plaintiff up from the floor,

1

dragged him to a holding cell, slammed Plaintiff to the floor again, and put him into another choke hold. (*Id.*)

Randall had two prior criminal convictions for domestic violence, both of which occurred while employed as a Detroit Police Officer. (*Id.*) Management of the Detroit Police Department was aware of Randall's criminal record. (*Id.*) Because of Randall's prior domestic violence, the Detroit Police Department placed Randall in the detention facilities in an administrative capacity. (Pl.'s Resp. Ex. A at 5.)

On January 28, 2008, the night after the assault against Plaintiff, Force Investigation responded to an allegation of excessive force against a different prisoner. (*Id.* at 4.) On February 4, 2008, Force Investigation was notified of the allegation of excessive force against Plaintiff. (*Id.*) Force Investigation reviewed the surveillance video. (*Id.*) The surveillance video confirmed Plaintiff's allegations, and the Board of Police Commissioners Meeting Minutes for February 21, 2008 ("Board Minutes") state:

> A review of the surveillance video shows Officer Randall striking, grabbing, throwing down, and choking [Plaintiff]. The video shows [Plaintiff] being lifted onto his feet while he is being choked by Officer Randall. [Plaintiff] is placed in a double barrel head lock and dragged to the bullpen where he is thrown down again. Once [Plaintiff] is thrown down, the video shows Officer Randall on top of [Plaintiff], grabbing [Plaintiff] around the neck with both hands, and choking him. According to [Plaintiff], Officer Randall told him that "he hated punk-ass niggers who hit women," and called him a "bitch."

(*Id.* at 5.) The Board Minutes go on to state:

> Based on the above circumstances, it is recommended that Officer Randall be charged with, but not limited to, the following violation of the Detroit Police Department Rules and Regulations: Conduct Unbecoming an Officer, contrary to the law enforcement code of ethics . . . . Due to the seriousness of the conduct, I am requesting your concurrence with the suspension of Officer Randall without pay, effective February 21, 2008.

(*Id.*) No one on the board objected and Randall's suspension without pay became

2

official on February 21, 2008, the same day of the board meeting.  (*Id.*)

## II.     Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III.     Analysis

#### A.     Relevant Law

Plaintiff alleges that Defendant violated his constitutional rights and brings this action under 42 U.S.C. § 1983.  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Local governments, like every other § 1983 "person," may be sued for constitutional deprivations under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978).

In order for a municipality to be liable, the local government must, under color of some official policy, "cause" an employee to violate another's constitutional rights.  *Id.* at 692.  The mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support liability.  *Id.* at 694.  Municipalities cannot be found liable under § 1983 under the doctrine of *respondeat superior* for the constitutional torts of their employees.  *Id.* at 663.

> A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those

>  whose edicts or acts may fairly be said to represent official policy, inflicts the
>  injury that the government as an entity is responsible under § 1983.

*Id.* at 694. The local government's policy or custom must be "the moving force" of the constitutional violation in order to establish the liability of a government body. *See Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir. 1994). If the municipality "impliedly or tacitly authorized, approved or encouraged the [misconduct], it promulgated an official policy within the meaning of *Monell*." *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980).

The Sixth Circuit has held that to satisfy the *Monell* requirements, a plaintiff must "identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).

Additionally, even if there is no express policy, inadequate supervision alone may be actionable where the subordinate's abuses are so apparent that knowledge can be imputed to the supervisor, and the supervisor's failure to rectify the problem approaches recklessness. *Redmond v. Baxley*, 475 F. Supp 1111, 1116 (E.D. Mich. 1979); *Leite v. City of Providence*, 463 F.Supp. 585, 589-590 (D.R.I. 1978).

### B.   Analysis

In this case, Plaintiff alleges that a policy existed within the Detroit Police Department that allowed Randall to remain a police officer and that any policy that would allow a police officer with a violent criminal history to remain on the police department would lead to the deprivation of Plaintiff's constitutional rights.

Plaintiff relies heavily on the Second Circuit's reasoning in *Turpin*, where the court discussed whether the City of West Haven had a policy of encouraging the harassment of the plaintiff, where the plaintiff had filed a claim of excessive force against a police officer and the board of commissioners declined to take any disciplinary action against that officer. Although the court ruled that the plaintiff in *Turpin* failed to show that there was any policy or custom that resulted in his injury, the court stated:

> An official policy could be inferred from the omissions of a municipality's supervisory officials, as well as from its acts. The issue of authorization, approval or encouragement is generally one of fact, not law. For example, where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts.

*Turpin*, 619 F.2d at 201. The court went on to state that a policy cannot be inferred from those in charge failing to discipline a single police officer for a single incident. However, the court did conclude that "a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or 'gross negligence' on the part of officials in charge." *Turpin*, 619 F.2d at 202.

Similar to *Turpin*, the issue here is whether the inaction – failing to remove Randall from the police force – of the City of Detroit constituted an "official policy" within the meaning of *Monell* and whether that policy caused Plaintiff to be subjected to a denial of his constitutional rights.

In this case, Plaintiff has attached the Board Minutes as the only exhibit to its

6

Response to Defendant's motion for summary judgment.[1]  Plaintiff argues that the Board Minutes serve as an admission that the police department knew, before Plaintiff was attacked by Randall, that Randall had been convicted for domestic violence and that the night before Randall attacked Plaintiff, Randall participated in an unprovoked attack on another citizen.[2]

The Board Minutes indicate that Randall attacked another prisoner the night *after* the altercation with Plaintiff, with Force Investigation responding to an excessive force allegation on January 28, 2008.  Randall's assault on Plaintiff occurred on January 27, 2008 and was reported to Force Investigation on February 4, 2008.  There is no mention of an excessive force allegation or any altercation on January 26, 2008.  The Board Minutes also state, "prior to both these incidents, Officer Randall had already been placed in the detention facilities in an administrative capacity due to a prior domestic violence."  Other than the domestic violence, there is nothing in the Board Minutes about any previous complaints or excessive force allegations against Randall before the incident with Plaintiff.

---

[1] Defendant's statement that the Board Minutes are inadmissible hearsay and should not be considered by the Court lacks merit.  The Board Minutes are admissible under the public records and report exception to the hearsay rule.  *See* Fed. R. Evid. 803(8).  However, the admission of the Board Minutes may depend on Plaintiff's ability to authenticate the document.  At this time, the Court has no reason to doubt Plaintiff's ability to call a witness at trial to do that.

Defendant's argument that the Board Minutes should be excluded under Rule 404 is also without merit.  While evidence of other crimes may not be used to prove a person's character or conformity, in this case, Plaintiff is clear that the purpose of admitting the Board Minutes is to show Defendant's knowledge of Randall's criminal history, not as character evidence against Randall.  This falls squarely within the exception explicitly stated in Rule 404(b).

[2] Plaintiff alleges that on January 26, 2008, Randall attacked a third person, prior to the two excessive force allegations outlined in the Board Minutes.  However, Plaintiff failed to present any facts or exhibits to support this allegation.

Plaintiff claims that the fact that Defendant allowed Randall to remain employed with the police force is enough to show that Defendant impliedly or tacitly authorized, approved or encouraged Randall to use excessive force against Plaintiff and promulgated an official policy to that effect. The facts simply do not support this conclusion. It is not the case, here, that Defendant knew of Randall's domestic violence conviction, knew Randall attacked prisoners, and chose to do nothing. Instead, the Board Minutes – the only evidence offered by Plaintiff – indicate that in response to the domestic violence issue, the police department took action and placed Randall in the detention facilities in an administrative capacity. Additionally, when Force Investigation was told of the excessive force allegations against Randall, they investigated the allegations and Randall was officially suspended without pay.

Courts have consistently denied relief where the plaintiff fails to show an affirmative link between the occurrence of various incidents of police misconduct and the adoption of any plan or policy, express or otherwise, showing authorization or approval of such misconduct. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). In this case, when the supervisory officials for Defendant learned of Randall's domestic violence, they removed him from a position of dealing with the general public. And as soon as the supervisory officials learned of Randall's excessive force allegations, he was suspended without pay. There are no facts presented to the Court to support the allegation that Defendant authorized or approved Randall's misconduct.

Despite Plaintiff's reliance on the reasoning in *Turpin*, just as the court ruled in that case, Plaintiff here has failed to prove that there was any official policy that caused his constitutional deprivation. Viewing the evidence in the light most favorable to

8

Plaintiff, there is no genuine issue for trial.  Plaintiff cannot rest on mere allegations and has failed to present facts that show Defendant had any policy or custom that caused Randall's misconduct or Plaintiff's injury.  Summary judgment for Defendant is appropriate because there is no indication in the record that Defendant impliedly or tacitly authorized, approved or encouraged Plaintiff's constitutional injuries.

**IV.   Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  December 5, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 5, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager